UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x

JUAN BERNOZA MARTINEZ and PEDRO RIVERA
on behalf of themselves and those similarly situated,

    Plaintiffs

 v.

ARTURO'S PIZZA, CORP. and ESAD "ARTURO" VUSANJIN
jointly and severally,

    Defendants.
--------------------------------------------------------------------------------x

**No.: 22-cv-3416**

**PLAINTIFFS'
COLLECTIVE ACTION
COMPLAINT**

**WITH JURY DEMAND**

Plaintiffs JUAN MARTINEZ (hereinafter "Plaintiff Martinez"), and PEDRO RIVERA (hereinafter "Plaintiff Rivera"), on behalf of themselves, and those similarly situated, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover unpaid wages for Plaintiffs and all others similarly situated. These named Plaintiffs are hourly employees, delivery persons and prep cooks, who have worked at Defendants' restaurant, the corporately owned Arturo's Pizza Corp., with an establishment located at 5189A Broadway, Bronx, NY 10463 (hereinafter "Arturo's Pizza") and owner Esad "Arturo" Vusanjin (hereinafter "Defendant Vusanjin").

2. Defendants have deprived Plaintiffs and their co-workers of minimum wage since at least on or about April 27, 2019 in violation of the Fair Labor Standards Act ("FLSA").

3. Defendants have deprived Plaintiffs of minimum wage since at least on or about April 27, 2016 in violation of the New York Labor Law ("NYLL").

4.      Defendants have violated notice-and-recordkeeping requirements by failing to provide statements along with wages listing the name of employee, name of employer, address and phone number of employer, rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, gross wages, deductions, allowances, if any, claimed as part of the minimum wage, and net wages. Defendants have further violated the requirement that they provide, upon employee request, explanations of how wages were calculated in violation of NYLL §195(3).

5.      Defendants have violated notice-and-recordkeeping requirements by failing to provide employees with wage notices as required on February 1 of every year in violation of NYLL § 195(1).

6.      Plaintiffs bring this action on behalf of themselves and similarly situated current and former employees who elect to opt-in to this action pursuant to 29 U.S.C. §§201 *et seq.* of the FLSA, and specifically, the collective action provision of 29 U.S.C. §216(b), to remedy violations of the wage-and-hour provisions of the FLSA.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper as this Court has original federal question jurisdiction under 28 U.S.C. § 1331 since this case is brought under the FLSA, 29 U.S.C. §§201, *et seq.* This Court has supplemental jurisdiction over the NYLL claims, as they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

8.      As stated below Arturo's Pizza is an employer engaged in commerce as defined in the FLSA, 29 U.S.C. §203(s).

9.      Upon information and belief, Arturo's Pizza is subject to personal jurisdiction in the State of New York since it is located in Bronx County, State of New York.

10.     Venue is proper in this District because Defendants conduct business in this Judicial District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

**THE PARTIES**

**PLAINTIFFS**

Plaintiff Juan Bernoza Martinez

11.     Plaintiff Juan Bernoza Martinez is an adult individual who is a resident of New York County, State of New York.

12.     Plaintiff Martinez was employed as a delivery person, cleaner and prep cook by Defendants from on or about February 2017 to on or about the present. Plaintiff Martinez had previously worked for Defendants for on or about 5 years and then left for approximately 3 years before returning to work for Defendants in February 2017.

13.     As a delivery person, cleaner and prep cook at Defendant Restaurant, Plaintiff Martinez was a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL § 190; and is not exempt by FLSA, 29 U.S.C. § 213.

14.     Plaintiff Martinez is a person who at all times was perceived by Defendants as an immigrant, Hispanic, and of Mexican national origin.

Plaintiff Pedro Rivera

15.     Plaintiff Pedro Rivera is an adult individual who is a resident of Bronx County, State of New York.

16.     Plaintiff Rivera was employed as a pizza cook by Defendants from on or about September 17, 2016 to the present.

17.     As a pizza cook at Defendant Restaurant, Plaintiff Rivera was a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL § 190; and is not exempt by FLSA, 29 U.S.C. § 213.

18.     Plaintiff Rivera is a person who at all times was perceived by Defendants as an immigrant, Hispanic, and of Puerto Rican origin.

## DEFENDANTS

19.     Defendant Arturo's Pizza is a New York Corporation doing business as Arturo's Pizza & Pasta located at 5189A Broadway, Bronx, NY 10463.

20.     Defendant Vusanjin on information and belief is a resident of Bronx County, New York.

21.     Defendant Vusanjin, who at all times relevant to this complaint has been the owner of Arturo's Pizza and manager of Plaintiffs, has exercised control over Plaintiffs' schedule, pay, and working conditions and exercised the right to hire and fire Plaintiffs.

22.     Plaintiffs were both hired by Defendant Vusanjin.

23.     Each Defendant jointly and severally employed Plaintiffs at all times relevant to this complaint.

24.     Upon information and belief, based on information provided by Plaintiffs, employees of Defendants, Arturo's Pizza is an enterprise whose annual gross volume of sales made, or business done, is in excess of $500,000. Specifically, Arturo's Pizza is a popular restaurant located in a high traffic section of Broadway in the Bronx, New York. The restaurant is open at least 13 hours a day, and on Friday and Saturday they are open for 14 hours a day. Defendants do in excess of $3000 per day in sales.

25.     The company employs over seven workers at any given time.

26.     As such, based on Plaintiffs' personal knowledge of Defendants' business, as well as upon information and belief, Defendants are an enterprise engaged in commerce as defined by 29 U.S.C. §203.

27.     Upon information and belief, as well as first-hand knowledge of Plaintiffs, employees of Defendants, Arturo's Pizza regularly conducts interstate business. Specifically, Arturo's Pizza has regularly accepted credit card payments debiting funds from out-of-state bank accounts. In addition, many of the staples served at the restaurant include products grown out of state such as olives, pineapple, and tomatoes.

28.     Defendants are covered employers within the meaning of the 29 U.S.C. §203(d) and NYLL §190.

29.     Upon information and belief, Defendants have had control over all employment practices at the Restaurant, including wages, scheduling and the hiring and firing of employees.

### Individual Factual Allegations

**Juan Martinez**

30.     Plaintiff Juan Martinez is an adult individual who is a resident of New York County, State of New York.

31.     Plaintiff Martinez was employed as a delivery person, cleaner and prep cook by defendants from on or about February 2017 to the present.

32.     As a delivery person, cleaner and prep cook for Arturo's Pizza, Plaintiff Martinez was a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL § 190; and is not exempt by FLSA, 29 U.S.C. § 213.

33.     At all times relevant Plaintiff Martinez has spent more than 2 hours per shift preparing food and he would spend from 10pm to 2am cleaning each shift.

34.     At all times Plaintiff Martinez reported directly to owner Defendant Vusanjin, who was known to Plaintiff Martinez as the boss and the owner.

February 2017- April 2017

35.     Plaintiff Martinez was hired by Defendant Vusanjin, who assigned him his hours and told him that his weekly pay would be $500.

36.     In the period from February 2017 to on or about April 2017, Plaintiff Martinez ordinarily worked Tuesday through Sunday, six days a week, from 4 pm to 4 am or 12 hours a day for a total of 72 hours per week.

37.     Plaintiff Martinez was required to stay long after the restaurant closed to do hours of cleaning and prep nightly.

38.     Twice a month Plaintiff Martinez would have to cover other workers on his day off and thus worked 7 days a week, from Monday to Sunday from 4 pm to 4 am, or 12 hours a day for a total of 84 hours per week.

39.     At all times in this period Plaintiff Martinez was paid an unlawful weekly rate of $500. Accordingly on the weeks he worked 72 hours he was effectively paid a straight time rate of $6.94 per hour; and on the weeks he worked 84 hours he was effectively paid a straight time rate of $5.95 per hour.

40.     At no time did Plaintiff Martinez take breaks or receive overtime pay.

41.     During this period, Plaintiff Martinez was involved in an on the job accident where he broke his clavicle while making a delivery. Plaintiff Martinez received no pay for two weeks while he was out sick, and was required to pay his own medical bills and was not offered workers compensation.

May 2017-January 2018

42.     Beginning on or about May 2017 through mid-January 2018, Plaintiff Martinez was told he would be paid an hourly straight rate of $8/hour.

43.     Plaintiff Martinez continued to work 72 and 84 hours per week.

44.     Thus, in the period between April 2017 to on or about January 15, 2018, Plaintiff Martinez earned an hourly straight wage of $8/hour. At no time was he paid overtime or did he receive breaks.

January 2018-January 2020

45.     In the period between on or about January 15, 2018 to on or about January 15, 2020, Plaintiff Martinez earned an hourly wage of $9/hour.

46.     Plaintiff Martinez continued to work 72 and 84 hours per week.

47.     Thus, in the period between January 15, 2018 to January 2020, Plaintiff Martinez earned an hourly straight wage of $9/hour. At no time was he paid overtime.

January 2020-January 2021

48.     In the period between January 15, 2020 to January 2021 Plaintiff Martinez earned an hourly wage of $13/hour.

49.     During this period Plaintiff Martinez ordinarily worked Tuesday through Sunday, six days a week, from 6 pm to 4 am or 10 hours a day for a total of 60 hours per week.

50.     Twice a month Plaintiff Martinez would have to cover other workers on his day off and thus worked 7 days a week, from Monday to Sunday from 6 pm to 4 am, or 10 hours a day for a total of 70 hours per week.

51.     Thus, in the period from January 15, 2020 to January 2021, Plaintiff Martinez earned an hourly straight wage of $13/hour. At no time was he paid overtime.

January 2021-present

52.     In the period between January 2021 and the present Plaintiff Martinez earned an hourly wage of $13/hour.

53.     During this period Plaintiff Martinez ordinarily worked Tuesday through Sunday, six days a week, from 11am to 8 or 9 pm for 9 or 10 hours a day for a total of 54 to 60 hours per week.

54.     Twice a month Plaintiff Martinez would have to cover other workers on his day off and thus worked 7 days a week, from Monday to Sunday from 11am to 8 or 9 pm for 9 or 10 hours a day for a total of 63 to 70 hours per week.

55.     Further, for the last five weeks Plaintiff Martinez has worked 7 days a week and worked between 68 and 71 hours per week.

56.     At all times relevant Plaintiff was paid on Sunday and at various times he was paid on Tuesdays. At all times he was paid in cash by Defendant Vusanjin once a week. Previously Defendant Vusanjin sometimes paid Plaintiff $80 a day paid daily. He would then pay the balance due under the unlawful hourly straight time rate.

57.     Defendant Vusanjin would make Plaintiff Martinez write his hours on a napkin and he would pay Plaintiff Martinez in cash.

58.     At all times relevant, Plaintiff Martinez' wages were set by Defendant Vusanjin.

59.     At no time was Plaintiff Martinez given breaks of any kind.

60.     At all times relevant Plaintiff Martinez was not paid overtime.

61.     Further at no time was Plaintiff Martinez paid the spread of hours premium for those days on which he worked in excess of ten hours.

62.     Further Plaintiff Martinez was required to purchase his own helmet and bicycle to perform his work as a delivery person.

63.     He was never repaid for these tools of the trade nor was he repaid for bicycle expenses such as new chains, flat fixes, inner tubes and new tires and other required bike repairs.

64.     In addition to the cost of the bicycle, such repairs averaged $50 per month.

65.     Further, in or about April 2017 while returning from a delivery, Plaintiff Martinez fell from his bicycle and broke his left clavicle. He went to Allen Hospital located at 5141 Broadway and was treated by hospital staff. Plaintiff Martinez was given 2 weeks off work without pay. After 2 weeks, Defendant Vusanjin demanded Plaintiff Martinez return to work.

66.     Plaintiff Martinez did not receive worker's compensation for his injury, even though he sustained the injury in the course of his regular job duties.

67.     Further Plaintiff Martinez incurred medical expenses due to his job and thus for the benefit of his employer and these expenses amount to an unlawful deduction from his wages.

**Pedro Rivera**

68.     Plaintiff Pedro Rivera is an adult Hispanic individual who is a resident of Bronx County, State of New York.

69.     Plaintiff Rivera was employed as a delivery person, cleaner and prep cook by Defendants from on or about September 17, 2016 to the present.

70.     As a pizza cook for Arturo's Pizza, Plaintiff Rivera was a covered employee as defined by FLSA, 29 U.S.C. §203(e) and NYLL §190; and is not exempt by FLSA, 29 U.S.C. § 213.

71.     At all times Plaintiff Rivera reported directly to owner Defendant Vusanjin, who was known to Plaintiff Rivera as the boss and the owner.

September 2016- December 2017

72.    Plaintiff Rivera was hired by Defendant Vusanjin, who assigned him his hours and told him that his weekly pay would be $11 per hour.

73.    In the period from September 17, 2016 to on or about December 2017 Plaintiff Rivera ordinarily worked Tuesday through Sunday, six days a week, from 5:30 pm to 2 am or 8.5 hours a day for a total of 51 hours per week.

74.    Thus, in the period Plaintiff Rivera earned an hourly straight wage of $11/hour. At no time was he paid overtime.

December 2017-December 2018

75.    In December 2017, Plaintiff Rivera asked for a raise to $13 per hour in according with the rising minimum wage.

76.    Plaintiff Rivera worked his same schedule as before and continued to be paid $13 per hour until December 2018.

77.    Plaintiff Rivera continued to work 51 hours per week.

December 2018-December 2019

78.    Beginning on or about December 2018 through November 2019, Plaintiff Rivera was told he would be paid an hourly straight rate of $15/hour.

79.    Plaintiff Rivera continued to work 51 hours per week.

December 2019-March 2020

80.    In December 2019 Plaintiff asked to be paid $16 per hour and asked to be paid by check and receive pay stubs.

81.    Defendant Vusanjin stated that he would do so if Plaintiff Rivera would agree to receive false pay stubs reflecting only 20 hours worked, and receive pay in hand for the additional hours worked at a straight time rate.

82.    When Plaintiff Rivera refused to accept pay stubs falsely underreporting his hours worked Defendant Vusanjin fired him in retaliation.

83.    Five days after firing Plaintiff Rivera Defendant Vusanjin hired him back as he was such a good worker, and raised him to a straight time rate of $16 per hour,

84.    Beginning on or about December 2019 through March 2020, Plaintiff Rivera was told he would be paid an hourly straight rate of $16/hour.

85.    Plaintiff Rivera returned to work his same schedule as before and continued to work 51 hours per week.

March 2020-September 2020

86.    From March 2020-September 2020 Plaintiff Rivera worked a reduced shift during covid from 5:30pm to midnight 6 days a week for 39 hours a week due to the pandemic.

87.    Plaintiff continued to be paid $16 per hour during this period.

September 2020-Present

88.    Starting in September 2020 to the present, Plaintiff Rivera returned to his previous schedule of 5:30 pm to 2 am or 8.5 hours a day but he was required to work seven days a week for three to four months, working 59.5 hours per week.

89.    In January or February 2021 Plaintiff Rivera returned to his six day a week schedule working from 5:30 pm to 2 am or 8.5 hours a day until May 2021 for a total of 51 hours per week.

90.    From May 2021 to September 2021 Plaintiff Rivera resumed working 7 days a week because Defendants were short staffed.

91.     During this period he worked his regular schedule of 5:30 pm to 2 am or 8.5 hours a day for a total of 59.5 hours per week.

92.     In September 2021 Plaintiff Rivera receive two unpaid weeks off work.

93.     In late September 2021 through on or about December 16, 2021 Plaintiff Rivera worked 6 days a week at his regular shift from 5:30 pm to 2 am for a total of 51 hours per week.

94.     In or about December 16, 2021 to the present was required to work 4 days a week at his regular shift from 5:30 pm to 2 am for a total of 34 hours per week...

95.     He continued to be paid $16 per hour.

96.     At all times relevant, Plaintiff Rivera was paid in cash by Defendant Vusanjin daily $136 per day or $16 per hour times 8.5 hours daily.

97.     Defendant Vusanjin pays Plaintiff Rivera at the end of each shift.

98.     At all times relevant, Plaintiff Rivera wages were set by Defendant Vusanjin.

99.     At all times relevant Plaintiff Rivera was not paid overtime.

100.    Further at no time was Plaintiff Rivera paid the spread of hours premium for those days on which he worked in excess of ten hours.

## FLSA COLLECTIVE ACTION ALLEGATIONS

101.    Named Plaintiffs bring their first, second, and seventh claims for relief as a collective action under Section 16(b), 29 U.S.C. § 216(b) of the FLSA on behalf of all hourly workers employed by Defendants between on or about April 27, 2019 and the date of final judgment in this matter that elect to opt in to this action. Such Plaintiffs are hereinafter referred to as the "FLSA Collective Plaintiffs."

102.    Defendants committed the acts alleged in this complaint knowingly, intentionally and willfully within the meaning of FLSA, 29 U.S.C. § 216.

103.    At all times relevant to this complaint, and upon information and belief, named Plaintiffs and the FLSA Collective Plaintiffs are and/or have been similarly situated, and have had substantially similar compensation provisions. Thus, the claims of Plaintiffs are essentially the same as those of the FLSA Collective Plaintiffs.

104.    Named Plaintiffs and the FLSA Collective Plaintiffs have been subject to Defendants' policies and practices of willfully failing to pay them in accordance with minimum wage requirements in violation of FLSA, 29 U.S.C. § 206.

105.    Named Plaintiffs and the FLSA Collective Plaintiffs have been subject to Defendants' policies and practices of willfully failing to pay overtime at a rate of one and a half times their hourly rate for hours worked in excess of forty (40) per workweek in violation of FLSA, 29 U.S.C. § 207.

106.    Named Plaintiffs and the FLSA Collective Plaintiffs have been subject to Defendants' policies and practices of willfully making unlawful tools of the trade deductions from Plaintiffs' pay in violation of FLSA 29 U.S.C. § 196(d).

107.    For notice and all other purposes related to claims brought under FLSA, 29 U.S.C. § 216(b), the names and addresses of the FLSA Collective Plaintiffs are available from Defendants' records. Notice can be provided via first class mail to the last address known to Defendants for each of the FLSA Collective Plaintiffs.

## PLAINTIFFS' DISCRIMINATION CLAIM

108.    Further, while at work at Defendant Arturo's pizza, Plaintiffs were routinely subjected to racial epithets and degrading comments by Defendant Vusanjin and other staff. Defendant Vusanjin frequently referred to Plaintiff Martinez as "borracho," "drunk," and "stupid." He frequently said to Plaintiff Martinez, "You can't work," and "Mexicans are shit." Another

employee, a cashier by the name of Abby LNU, frequently called Plaintiff Martinez "you bitch" and "you piece of shit."

109.    Defendant Vusanjin has stated repeatedly to Plaintiff Rivera on a daily basis that he is a "piece of shit," "mierda," that he "does too many drugs" and that he has "no brain."

110.    Further, while at work on or about May 30, 2020, Defendant Vusanjin approached Plaintiff Martinez to tell Plaintiff Martinez that he, Defendant Vusanjin, had seen security camera footage of Plaintiff Martinez' wife on the premises of Arturo's Pizza. Defendant Vusanjin told Plaintiff Martinez that if he saw Plaintiff Martinez' wife on the premises again, he would call immigration authorities. Plaintiff Martinez understood this to mean that Defendant Vusanjin was threatening Plaintiff Martinez with deportation from the United States.

## FIRST CLAIM FOR RELIEF

### (FLSA Minimum Wage Claim, 29 U.S.C. §§ 201 *et seq.*, Brought by Plaintiff Martinez on Behalf of Himself and the FLSA Collective Plaintiffs)

111.    Plaintiff Martinez, on behalf of himself and the FLSA Collective Plaintiffs, repeats, realleges and incorporates each and every preceding paragraph as if set forth fully herein.

112.    At all times relevant, each Defendant has been, and/or continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

113.    At all times relevant, Defendants employed Plaintiff Martinez and FLSA Collective Plaintiffs as "employees" within the meaning of FLSA, 29 U.S.C. § 203.

114.    Defendants were required to pay Plaintiff Martinez and the FLSA Collective Plaintiffs at a rate not less than the minimum wage rate under the FLSA for all hours worked.

115.    Upon information and belief, Defendants knowingly failed to pay Plaintiff Martinez and FLSA Collective Plaintiffs the required minimum wage under the FLSA for each hour worked.

116.    Plaintiff Martinez, on behalf of himself and the FLSA Collective Plaintiffs, seek damages for his unpaid compensation, liquidated damages as provided by the FLSA, attorneys' fees and costs, along with such other relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

**(FLSA Overtime Claim, 29 U.S.C. § 201 *et seq.* Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)**

117.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

118.    Throughout the period covered by the applicable statute of limitations and upon information and belief, plaintiffs and other FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per workweek.

119.    At all times relevant, and upon information and belief, Defendants have repeatedly and willfully failed to pay the named Plaintiffs and the FLSA Collective Plaintiffs in accordance with the overtime provisions of the FLSA for work performed in excess of forty (40) hours per workweek.

120.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek and are entitled to recover damages for their unpaid overtime compensation, liquidated damages as provided by the FLSA, attorneys' fees and costs along with such other relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF

**(New York State Minimum Wage Act Claim, NYLL Article 19 §§ 650 *et seq.,* Brought by Plaintiff Martinez on Behalf of Himself)**

121.    Plaintiff Martinez, on behalf of himself repeats, realleges and incorporates each and every preceding paragraph as if set forth fully herein.

122.    Throughout the period covered by the applicable statute of limitations and upon information and belief, Defendants knowingly paid Plaintiff Martinez less than the minimum wage as required by NYLL and the supporting regulations of the New York State Department of Labor.

123.    Defendants did not pay the minimum wage for all hours worked by Plaintiff Martinez.

124.    Upon information and belief, Defendants' failure to pay Plaintiff Martinez the minimum wage was willful within the meaning of the NYLL.

125.    Plaintiff Martinez seeks to recover their unpaid compensation, liquidated damages pursuant to NYLL, Article 6, § 198, attorneys' fees, costs, pre- and post-judgment interest along with such other relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

**(New York State Minimum Wage Act - Overtime Claim, NYLL § 650 *et seq.,* Brought by Plaintiffs on Behalf of Themselves)**

126.    Plaintiffs, on behalf of themselves repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

127.    Throughout the period covered by the applicable statute of limitations and upon information and belief, Defendants willfully and repeatedly failed to pay Plaintiffs at the overtime rate for hours worked in excess of forty (40) hours per workweek as required by NYLL.

128.    Plaintiffs seek and are entitled to recover their respective unpaid compensation, damages pursuant to NYLL, Article 6, § 198, attorneys' fees, costs, pre- and post-judgment interest along with such other relief as this Court deems just and proper.

129.    Plaintiffs have been damaged in an amount as yet determined, plus liquidated damages.

## FIFTH CLAIM FOR RELIEF

**(Notice-and-Recordkeeping Requirements, NYLL § 195(3), Brought by Plaintiffs on Behalf of Themselves)**

130.    Plaintiffs, on behalf of themselves, repeat, reiterate, and incorporate each and every preceding paragraph as if set forth fully herein.

131.    Defendants have failed to provide Plaintiffs with wage statements or explanations of how their wages were calculated in violation of NYLL § 195(3).

132.    Plaintiffs have been damaged in an amount as yet determined, plus liquidated damages.

## SIXTH CLAIM FOR RELIEF

**(Notice-and-Recordkeeping Requirements, NYLL § 195(1), Brought by Plaintiffs on Behalf of Themselves)**

133.    Plaintiffs, on behalf of themselves, repeat reiterate, and incorporate each and every preceding paragraph as if set forth fully herein.

134.    Defendants have failed to provide Plaintiffs with wage notices as required on February 1 of every year in violation of NYLL § 195(1).

135.    Plaintiffs have been damaged in an amount as yet determined, plus liquidated damages.

## SEVENTH CLAIM FOR RELIEF

**(FLSA Tools of the Trade, 29 U.S.C. § 203(m) and 29 CFR 531.59, Brought by Plaintiff Martinez on Behalf of Himself and the FLSA Collective Plaintiffs)**

136.    Plaintiff Martinez, on behalf of himself and the FLSA Collective Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

137.    Throughout the period covered by the applicable statute of limitations, Defendants unlawfully failed to reimburse Plaintiff Martinez for tool of the trade deductions such as bicycle repairs, helmets, and bicycles as well as medical costs incurred for the benefit of Defendants

138.    Plaintiff Martinez, on behalf of himself and the FLSA Collective Plaintiffs, has been damaged in an amount as yet determined, plus liquidated damages as provided by the FLSA, attorneys' fees and costs along with such other relief as this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF

**(Unlawful Deductions, NYLL §§ 196(d), Brought by Plaintiff Martinez on Behalf of Himself)**

139.    Plaintiff Martinez, on behalf of himself, repeats, reiterates and incorporates each and every preceding paragraph as if set forth fully herein.

140.    Throughout the period covered by the applicable statute of limitations, Defendants unlawfully failed to reimburse Plaintiff Martinez for expenses incurred for the benefit of Defendants' business such as bicycle repairs, helmets, and bicycles, and medical expenses in violation of the NYLL.

141.    Plaintiff Martinez has been damaged in an amount as yet determined, plus liquidated damages.

## NINTH CLAIM FOR RELIEF

**(Spread-of-Hours Pay Violation pursuant to N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4, Plaintiff Martinez on Behalf of Himself)**

142.    Plaintiff Martinez, on behalf of himself, repeats, reiterates and incorporates each and every preceding paragraph as if set forth fully herein.

143.    Defendants regularly and knowingly required Plaintiff Martinez to work in excess of ten (10) hours per day.

144.    Defendants knowingly, willfully, and intentionally failed to pay Plaintiff Martinez one extra hour's pay at minimum wage for every day in which the interval between Plaintiff's start and end times exceeded ten hours, in violation of New York State labor regulations. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4.

145.    Because of defendants' willful violation of the NYLL, Plaintiff Martinez is entitled to recover from defendants, jointly and severally, his unpaid wages originating from the spread of hours provision, liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-judgment interest, all in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF

**(New York City Human Rights Law: Perceived National Origin/Immigration Status Discrimination Unlawful Discriminatory Practices Brought by Plaintiffs Against All Defendants)**

146.    Plaintiffs repeat and reallege all the allegations in this complaint and specifically allegations as if set forth fully herein.

147.    Based on those allegations, Defendants discriminated and against Plaintiffs on the basis of their perceived national origin/ immigration status, by subjecting them to hostile work environment based on their Hispanic race and or Mexican nationality and/or perceived immigration status.

148.    Due to Defendants' violation of the New York City Human Rights Law, Plaintiffs are entitled to recover from Defendants damages in a sum to be determined by a jury.

**ELEVENTH CAUSE OF ACTION**

**(RETALIATION IN VIOLATION OF NYLL 215 Brought by Plaintiff Rivera on Behalf of Himself)**

149.     Plaintiff Rivera hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

150.     During the period covered by the applicable statute of limitations, Defendants retaliated against Plaintiff Rivera by threatening him with termination of his employment and in fact terminating his employment for making complaints regarding their pay to him.

151.     As a result of this retaliation, these Plaintiff Rivera seeks damages, as well as penalties for retaliation allowed under the NYLL.

**RELIEF SOUGHT**

**WHEREFORE**, plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, request relief as follows:

A.  Designation of this action as a collective action for the purposes of the claims brought on behalf of the FLSA Collective Plaintiffs, along with prompt issuance of opt-in notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the opt-in class;

B.  Designation of plaintiffs as representatives of the FLSA Collective Plaintiffs;

C.  An order declaring that Defendants violated the FLSA in the manners stated in this complaint;

D.  An order declaring that Defendants' violations of the FLSA were willful;

E.  An order declaring that Defendants violated the NYLL in the manners stated in this complaint;

F.  An order declaring that Defendants' violations of the NYLL were willful;

G.  An award of overtime compensation under the FLSA and NYLL;

H.  An award of minimum wage compensation under the FLSA and NYLL;

I.  An award for tools of the trade and unlawful deductions under the FLSA and NYLL;

J.  An award of spread of hours premium under the NYLL;

K.  An award retaliation penalty under the NYLL;

L.  An award of liquidated damages pursuant to the FLSA;

M.  An award of damages for violations of NYLL;

N.  All penalties available under the applicable laws;

O.  Attorneys' fees pursuant to 29 U.S.C. § 216, NYLL § 663 and all other applicable statutes;

P.  An award of all damages recoverable under New York City Human Rights Law for Plaintiffs.

Q.  Interest as provided by law; and

R.  Such other relief as this Court deems just and proper.

## JURY TRIAL

Plaintiffs demand a jury trial for all causes of action and claims for which they have a right to a jury trial.

Dated: New York, New York
       April 27, 2022

Respectfully submitted,

JULIEN & MIRER, PLLC

By: Ria Julien
Attorney for Plaintiffs
1 Whitehall St., 16th floor
New York, NY 10004
(212) 231-2235
rjulien@julienmirer.com